# In the United States Court of Federal Claims

No. 16-101C

(Filed: March 27, 2017)

| | |
|---|---|
| **Q INTEGRATED COMPANIES, LLC,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**UNITED STATES,** )<br>)<br>**Defendant,** )<br>)<br>and )<br>)<br>**SAGE ACQUISITIONS, LLC,** )<br>)<br>**Defendant-Intervenor.** )<br>) | Post-award bid protest; motion for relief from judgment; RCFC 60(b); post-decisional change in circumstances; standing; application of *Tinton Falls* |

James C. Fontana, Dempsey Fontana, PLLC, Tysons Corner, Virginia for plaintiff.  With him on the briefs were David B. Dempsey and Jeffry R. Cook, Dempsey Fontana, PLLC, Tysons Corner, Virginia.

Heidi L. Osterhout, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for defendant.  With her on the briefs were Chad A. Readler, Acting Assistant Attorney General, Civil Division, Benjamin C. Mizer, former Principal Deputy Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Of counsel was Rosamond Z. Xiang, Trial Attorney, United States Department of Housing & Urban Development, Washington, D.C.

Richard W. Oehler, Perkins Coie LLP, Seattle, Washington. for defendant-intervenor.  With him on the briefs was Andrew J. Victor, Perkins Coie LLP, Seattle, Washington.

**OPINION AND ORDER**

LETTOW, Judge.

The court issued its decision on the administrative record in this post-award bid protest on April 20, 2016.  *See Q Integrated Cos., LLC v. United States*, 126 Fed. Cl. 124 (2016), *appeal dismissed*, No. 2016-1991 (Fed. Cir. June 2, 2016).  In the procurement at issue, the United

States Department of Housing and Urban Development ("HUD" or "government") solicited and awarded contracts for services in marketing and selling single-family homes acquired by HUD after the owners defaulted on mortgages supported by the Federal Housing Administration. *Id*. at 127. Plaintiff ("Q Integrated") challenged awards by HUD of contracts to Sage Acquisitions, LLC ("Sage") for three geographic areas designated by HUD as Areas 7A, 1D, and 5P. *Id*. Q Integrated's motion for judgment on the administrative record was granted in part and denied in part, and the government's and defendant-intervenor Sage's motions for judgment on the administrative record were granted in part and denied in part. *Id*. at 148. Judgment was entered on April 21, 2016. The court left the awards to Sage undisturbed for the base period and the first option year, but set aside and enjoined the awards beyond the end of the first option period on May 31, 2017. *Id*. To obtain services after that date, the court specified that HUD had to either (1) "allow Q Integrated to revise its final proposal and then . . . conduct a new evaluation [of offers], or (2) conduct a new solicitation for the pertinent services." *Id*.

On June 22, 2016, the government filed a motion for relief from the judgment pursuant to Rules 60(b)(2), (b)(5), and (b)(6) of the Rules of the Court of Federal Claims ("RCFC"). Shortly thereafter, at the request of the parties, briefing on that motion was suspended for months while the Small Business Administration ("SBA") considered size determinations of entities competing for contractual awards. Briefing was renewed when SBA decided that a number of offerors, including Q Integrated and Sage, were "other than small" in connection with competition for contracts for HUD areas other than the areas at issue in this case. At that point, the government contended that Q Integrated no longer had standing and that the judgment should be vacated. Defendant-intervenor Sage supports the government's motion, and Q Integrated opposes it.

For the reasons stated, the government's motion for relief from judgment is denied.

**FACTS**

*A. The HUD Procurement*

HUD works with private contractors to "manage and market its inventory of single-family homes obtained as a result of mortgage defaults." *Q Integrated*, 126 Fed. Cl. at 128. After a decade of using single contractors for administrative, program support, management, and marketing services for this program, in 2009 HUD divided the contracts into Asset Management, which includes marketing and sales, and Field Service Management, which encompasses property management. *Id.* HUD also divided the contracts across four regional Homeownership Centers located in Atlanta, Philadelphia, Denver, and Santa Ana, which regional centers are then divided into smaller "areas" consisting of a state or group of states. *Id.* Each area is designated by a number followed by the first letter of the regional headquarters, *e.g.*, Area 1D is managed by the Denver Homeownership Center and covers Utah, Colorado, New Mexico, and Northern Texas. *See id.*

The HUD procurement in this case covered Asset Management contracts in twelve areas, specifically 3A (Illinois), 4A (Indiana and Kentucky), 5A (North Carolina and South Carolina), 6A (Alabama, Mississippi, and Tennessee), 7A (Georgia), 8A (Florida, Puerto Rico, and the U.S. Virgin Islands), 1D (Utah, Colorado, New Mexico, and Northern Texas), 2D (Kansas,

Oklahoma, Arkansas, Louisiana, Missouri, and Southern Texas), 1P (Michigan), 3P (Maine, Vermont, New York, New Hampshire, Rhode Island, New Jersey, Massachusetts, and Connecticut), 4P (Ohio), and 5P (Pennsylvania, West Virginia, Virginia, Delaware, Maryland, and the District of Columbia). *Q Integrated*, 126 Fed. Cl. at 128-29. Within this procurement, "Areas 3A, 6A, 7A, 8A, 1D, 1P, 3P, 4P, and 5P were to be 100 percent small business set-aside contracts, Areas 4A and 5A were to be woman-owned small business set-aside contracts, and Area 2D was to be an unrestricted competition." *Id.* at 129.

HUD issued its request for proposals ("RFP") for these Asset Management contracts (solicitation number DU204SA-13-R-0005) on July 25, 2014. *Q Integrated*, 126 Fed. Cl. at 129. The RFP stated that "the contracts would be single award indefinite delivery/indefinite quantity contracts" with a base period from the award date until May 31, 2016, plus four one-year option periods. *Id.* The offerors' proposals were evaluated through "a best-value source selection based on a performance-price trade-off." *Id.* at 130. First, HUD evaluated proposals for technical acceptability. *Id.* All "technically acceptable" proposals were then evaluated for "price reasonableness and balanced pricing." *Id.* Proposals with "reasonable pricing" were then evaluated for past and present performance. *Id.* Contract references demonstrating the offerors' past performance were evaluated for recency, quality, and relevancy, and based on these factors each offeror received an "overall past/present performance confidence rating of Excellent/High Confidence, Good/Significant Confidence, Fair/Some Confidence, No Confidence, [or] Neutral/Unknown Confidence." *Id.* at 130-31.

For the contracts encompassing Areas 7A, 1D and 5P at issue in this case, HUD determined that the proposal from Sage "provided the best value based on a trade-off between its higher past performance rating and the price difference over the lowest-priced offer." *Q Integrated*, 126 Fed. Cl. at 136. Q Integrated had the lowest-priced offer for Areas 1D and 5P, and the second-lowest-priced offer for Area 7A. *Id.* Sage was the second-lowest-priced offeror for Areas 1D and 5P, and the third-lowest-priced offeror for Area 7A. *Id.* Sage received an overall past performance rating for its final proposal of "Excellent/High Confidence," whereas Q Integrated received a final overall past performance rating of "Fair/Some Confidence." *Id.* at 135-36.

### B. Q Integrated's Bid Protest before This Court

Q Integrated filed its protest in this court on January 19, 2016, arguing that HUD "improperly evaluated its past performance information, with the result that Q Integrated unfairly received an overall past performance rating of Fair/Some Confidence," that HUD's evaluation of Sage's past performance was irrational, and that HUD failed to hold "meaningful discussions" with Q Integrated in contravention of the solicitation and the Federal Acquisition Regulations ("FAR"). *Q Integrated*, 126 Fed. Cl. at 138, 140, 142, 144. Q Integrated sought judgment on the administrative record, and Sage and the government filed corresponding cross-motions. *See id.* at 138. The court granted Q Integrated's motion in part and denied it in part, and granted Sage's and the government's motions in part and denied them in part. *Id.* at 148. The court determined that HUD's evaluations of Q Integrated's and Sage's past performance information were not arbitrary and capricious, *id.* at 140-43, but found that HUD did not hold meaningful discussions with Q Integrated, *id.* at 144-46. Among other things, HUD's procuring officials misstated

performance information regarding Q Integrated during discussions, "failed to disclose to Q Integrated that its past performance submission either showed 'significant weaknesses' or constituted 'adverse past performance information,'" and adjusted past performance evaluations contrary to the terms of the solicitation. *Id.* at 145. The court determined that Q Integrated was prejudiced by the government's errors and omissions in discussions. *Id.* at 146-47. If the discussions with Q Integrated had been accurate and the ratings had not been adjusted contrary to the solicitation, Q Integrated could have revised its proposal and would have had a substantial chance of receiving the contract award. *Id.*

The court did not disturb the award of the Asset Management contracts for Areas 7A, 1D, and 5P to Sage for the base period and the first option year because performance was already underway at the time of the court's decision. *See Q Integrated*, 126 Fed. Cl. at 147-48. The court set aside and enjoined the awards to Sage "beyond the end of the first option period on May 31, 2017," and provided two options to HUD to secure asset management services beyond that date. *Id.* at 148. HUD was enjoined to either "(1) allow Q Integrated to revise its final proposal and then . . . conduct a new evaluation for the contested areas, or (2) conduct a new solicitation for the pertinent services." *Id.* The court also awarded Q Integrated reasonable costs incurred in bid preparation and proposal. *Id.* Judgment was entered on April 21, 2016, ECF No. 74.

*C. SBA's Size Determination for Q Integrated*

On January 29, 2016, Q Integrated received an award under the HUD Asset Management contract solicitation for Area 6A. Def.'s Mot. to Request Relief from Judgment ("Def.'s Mot."), ECF No. 86, Ex. 1 ("Area Office Size Determination") at 3. Two unsuccessful offerors for Area 6A, ARNC Bridge Consulting and Alpine/First Preston, JV VI, filed protests with the SBA alleging that Q Integrated was ineligible to be awarded the contract because it was not a small business. *Id.* These protests triggered a formal SBA size determination. *Id.* at 4. In a decision issued on June 10, 2016, the SBA Area Office concluded that Q Integrated was "other than a small business concern *for the subject procurement*." *Id.* at 14 (emphasis added). The Area Office determined that Matt Martin Real Estate Management ("MMREM"), a large business that owns 49% of Q Integrated, had the power to control Q Integrated under the terms of its operating agreement based on the totality of the circumstances surrounding the relationship between the companies. *See id.* at 7-9. The Area Office also found that MMREM was an "ostensible subcontractor" for the purposes of the Area 6A contract because MMREM was to perform "primary and vital portions of the instant procurement." *See id.* at 9-13. Pursuant to 13 C.F.R. § 121.103(h)(4), "[a] contractor and its ostensible subcontractor are treated as joint venturers, and therefore affiliates, for size determination purposes." Because MMREM is not a small business, Q Integrated was "determined not to be a small business through affiliation with MMREM" for purposes of the Area 6A contract. Area Office Size Determination at 13.

Q Integrated appealed the Area Office size determination to the SBA Office of Hearings and Appeals ("OHA"), which subsequently upheld the determination that Q Integrated was other than small with regard to the Area 6A protest. *See Q Integrated Cos., LLC*, SBA No. SIZ-5778, 2016 WL 6301699 (Sept. 22, 2016) ("*Q Integrated* (SBA)") (filed as Joint Status Report (Sept. 30, 2016), Attach. 1, ECF No. 94). OHA agreed with the Area Office that MMREM is generally

4

affiliated with Q Integrated based on the totality of the circumstances surrounding their relationship, such circumstances including MMREM's 49% ownership share in Q Integrated, their ongoing contractor/subcontractor relationship under Q Integrated's operating agreement, and the co-location of MMREM and Q Integrated employees. *Id.* at *12-14. OHA did not consider whether MMREM and Q Integrated were affiliated under the "ostensible subcontractor" rule, as determined by the Area Office, because the general affiliation between the two companies was sufficient to find that Q Integrated was other than small. *Id.* at *15.

### D. SBA's Size Determination for Sage

Sage's status as a small business was also challenged before the SBA with regard to contracts it has been awarded under the HUD procurement. On November 4, 2015, an Area Office concluded that Sage was a small business for the procurement with regard to awards it received for Areas 1D and 4P. *See Sage Acquisitions, LLC*, SBA No. SIZ-5783, 2016 WL 6820412, at *3 (Oct. 5, 2016). Sage was awarded additional contracts for Areas 1P and 3P in February 2016, *Q Integrated*, 126 Fed. Cl. at 138, which prompted additional size protests from losing offerors, *see Sage Acquisitions*, 2016 WL 6820412, at *6-11. On October 5, 2016, after multiple back-and-forth decisions between the Area Office and OHA with regard to these protests, OHA ultimately determined that Sage was other than small with regard to the contracts for Areas 1P and 3P. *Id.* at *1.[1] OHA determined that Sage was other than small for Areas 1P and 3P because the partners in the joint venture, Raine & Company, LLC and PEMCO Limited, did not satisfy the requirements of the mentor-protégé exception for joint venture size determinations pursuant to 13 C.F.R. §§ 124.513(c) and (d). *Id.* at *22-27.

Sage has challenged OHA's decision in this court, arguing that the SBA's issuance of multiple size determinations for Sage regarding the HUD procurement, as well as OHA's determination that the Sage joint venture does not satisfy the mentor-protégé exception, were arbitrary and capricious. *See* Compl., *Sage Acquisitions, LLC v. United States*, No. 16-1355, ¶¶ 26-37 (Fed. Cl. Oct. 17, 2016). Cross-motions for judgment on the administrative record have been briefed and are pending in that case.

### E. The Government's Motion for Relief from Judgment

The government filed its motion for relief from judgment in this case on June 22, 2016. *See* Def.'s Mot. The government argues in its motion that the determination that Q Integrated is other than small for the Area 6A contract renders Q Integrated ineligible for a contract award for

---

[1]Sage and HUD had argued to OHA that an Area Office determination in November 2015, stating that Sage was a small business for Areas 1D and 4P, was a final decision that controlled OHA's size determination for Areas 1P and 3P. *Sage Acquisitions*, 2016 WL 6820412, at *20. OHA disagreed, explaining that the Area Office size determination did not have precedential value because it had not been appealed, and that a size determination for a mentor-protégé joint venture such as Sage is "a question specific to each contract." *Id.* at *21-22. As such, OHA concluded that differences between offers for each contract area sought by the offeror could necessitate different size determinations on a per-offer or per-contract basis. *Id.* at *22.

5

any area of the HUD procurement. *See id.* at 4-5. As the government would have it, Q Integrated lost its standing to bring its protest of the award to Sage for Areas 7A, 1D, and 5P because of the size determination for that other area. *Id.* at 5. Additionally, the government asks the court to vacate its decision to award bid preparation and proposal costs to Q Integrated because it was ineligible for award due to the size determination. *Id.* at 9.

The court suspended briefing on the government's motion until OHA issued its various size determinations. *See* Order of Aug. 18, 2016, ECF No. 93. Following OHA's decisions, the court requested that HUD file a notice "indicating [its] preferred course of action among the options available to satisfy the court's order and judgment in this case." Order of Jan. 10, 2017, ECF No. 99. In the notice that HUD submitted, the agency reiterated its preference that the court grant its motion for relief from the judgment and allow Sage to continue performance for Areas 7A, 1D, and 5P. Def.'s Notice at 2-3, ECF No. 102. If the motion were not granted and the judgment were to stand, HUD represented that it could not feasibly conduct discussions and reevaluate Q Integrated's proposal or issue a new solicitation because Q Integrated was found to be other than small. *Id.* at 4-6. HUD also stated that reevaluating any remaining viable small businesses is not in the government's best interest because Sage has already been determined to provide the best value to the government for these contracts. *Id.* at 6-7. Thus, HUD indicated that its preferred course of action would be to realign existing Asset Management small business contracts to cover Areas 7A, 1D, and 5P through contract modification. *Id.* at 7-9.

Following the submission of the government's notice, the court reinstated briefing on the government's motion for relief from judgment. *See* Order of Feb. 10, 2017, ECF No. 108. Sage supported the government's position that the judgment should be vacated under RCFC 60(b) because Q Integrated lacks standing after having been found to be other than small with regard to Area 6A, an area not involved in this case. *See* Intervenor Sage Acquisitions, LLC's Resp. to the Gov't's Mot. for Relief from Judgment ("Sage's Resp.") at 1, ECF No. 110, while Q Integrated argues that the government's motion should be denied because it fails to satisfy the requirements of RCFC 60(b), *see generally* Pl.'s Opp'n to Def.'s Mot. to Request Relief from the Judgment ("Pl.'s Opp'n"), ECF No. 109.

**STANDARDS FOR DECISION**

Pursuant to RCFC 60(b), the court may relieve a party from a judgment entered against them for the following reasons:

  (1)  mistake, inadvertence, surprise, or excusable neglect;

  (2)  newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b);

  (3)  fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

  (4)   the judgment is void;

(5)    the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)    any other reason that justifies relief.

RCFC 60(b); *see also American Innotek, Inc. v. United States*, 129 Fed. Cl. 444, 446 (2016).[2] Here, the government alternatively bases its motion for relief on RCFC 60(b)(2), (b)(5), and (b)(6). *See generally* Def.'s Mot.

Under RCFC 60(b)(2), "the moving party 'must show that the newly discovered evidence, if introduced at trial, clearly would have produced a different result if presented before the original judgment.'" *Madison Servs., Inc. v. United States*, 94 Fed. Cl. 501, 507 (2010) (citing *Venture Indus. Corp. v. Autoliv ASP, Inc.*, 457 F.3d 1322, 1328 (Fed. Cir. 2006); *Placeway Constr. Corp. v. United States*, 19 Cl. Ct. 484, 489 (1990)). Newly discovered evidence is "limited to 'evidence of facts which existed at the time of decision and of which the aggrieved party was excusably ignorant.'" *TDM Am., LLC v. United States*, 100 Fed. Cl. 485, 490 (2011) (citing *Yachts Am., Inc. v. United States*, 8 Cl. Ct. 278, 281 (1985), *aff'd*, 779 F.2d 656 (Fed. Cir. 1985)).

Pursuant to RCFC 60(b)(5), a party may seek relief from a judgment if "a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (citing *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992)) (internal quotation marks omitted). "The party seeking relief bears the burden of establishing that changed circumstances warrant relief." *Id.* (citing *Rufo*, 502 U.S. at 383).

RCFC 60(b)(6) serves as a "catch-all" provision, authorizing the court to grant relief from judgments when appropriate to accomplish justice. *Infiniti Info. Sols., LLC v. United States*, 93 Fed. Cl. 699, 704 (2010) (citations omitted). The court is limited in granting relief under RCFC 60(b)(6) in two respects: "(1) the grounds asserted for relief must not be the same as those listed in [RCFC] 60(b)(1)-(5), and (2) there must be a valid reason that justifies affording the relief, usually broadly described as 'extraordinary circumstances.'" *Id.* (citing *Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1382 (Fed. Cir. 2002)). The party seeking relief must show that the "extraordinary circumstances prevented [the] party from taking timely action to prevent or correct an erroneous judgment." *Id.* (citations omitted); *see also Progressive Indus., Inc. v. United States*, __ Fed. Cl. __, 2017 WL 1058481, at \*2 (Mar. 21, 2017) (referring to Rule 60(b)(6) as providing a "last resort") (quoting *Infiniti Info. Sols.*, 93 Fed. Cl. at 704).

## ANALYSIS

As an initial matter, the government's motion under RCFC 60(b)(2) is not appropriate. "Newly discovered evidence" under this rule only encompasses facts which existed at the time the court made its decision and entered judgment. *See TDM Am.*, 100 Fed. Cl. at 490. Here, the

---

[2]Substantively, RCFC 60(b) is identical to Fed. R. Civ. P. 60(b).

7

new evidence upon which the government relies is the SBA's determination that Q Integrated was not small with regard to an Asset Management contract for HUD's Area 6A. The Area Office made its initial size determination on June 10, 2016, and it was affirmed by OHA on September 22, 2016. *See* Area Office Size Determination at 1; *Q Integrated* (SBA), 2016 WL 6301699 at *1. The court had issued its decision in this case on April 28, 2016, before any size determination regarding Q Integrated was issued. *See Q Integrated*, 126 Fed. Cl. at 124. The fact that Q Integrated has been adjudged to be other than small for an indirectly related contract did not exist when the court entered judgment, and thus cannot form the basis to grant the government relief from the judgment under RCFC 60(b)(2).

With regard to RCFC 60(b)(5) and (b)(6), the government's motion for relief from judgment rests on its contention that OHA's size determination for Q Integrated with regard to Area 6A divested Q Integrated of standing to protest the award to Sage for Areas 7A, 1D, and 5P. *See* Def.'s Mot. at 5-8. Pursuant to the Tucker Act, this court has jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1), added by the Administrative Dispute Resolution Act, Pub. L. No. 104–320, § 12, 110 Stat. 3870, 3874 (Oct. 19, 1996); *see also Systems Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1380-81 (Fed. Cir. 2012). To be an "interested party" under the Tucker Act, the protestor must show that "(1) it was an actual or prospective bidder or offeror, and (2) it had a direct economic interest in the procurement or proposed procurement." *Distributed Solutions, Inc. v. United States*, 539 F.3d 1340, 1344 (Fed. Cir. 2008). To prove direct economic interest, the offeror must show that it had a "substantial chance" of receiving the contract but for the government's alleged errors in the procurement process, *i.e.*, that it was prejudiced by such errors. *Information Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

The parties do not dispute that Q Integrated was an actual bidder for the HUD procurement with regard to Areas 7A, 1D, and 5P. The government and Sage assert, however, that Q Integrated does not *now* have a substantial chance of receiving a contract award because it has been deemed other than small for a different area, and the contract areas in this case were set aside for small businesses. *See* Def.'s Mot. at 5-6; Sage's Resp. at 4-6. Notably, the government and Sage ignore that a bid protester can demonstrate prejudice, and therefore establish standing, by showing that "if as a result of a successful bid protest, the government would be obligated to rebid the contract and the protester could compete for the contract during the reopened bid." *Tinton Falls Lodging Realty, LLC v. United States*, 800 F.3d 1353, 1359 (Fed. Cir. 2015) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1334 (Fed. Cir. 2001)). The "substantial chance" standard only requires that the protester show that it could reasonably compete for the contract, not that it would necessarily be awarded the contract when subjected to competition with other hypothetical bidders. *Id.* at 1360. Here, the court found that HUD's procurement process was deficient with regard to its evaluation of Q Integrated's proposal, and the judgment requires HUD either to reevaluate an updated proposal by Q Integrated or to conduct a new solicitation for Areas 7A, 1D, and 5P. *See Q Integrated*, 126 Fed. Cl. at 148. Despite HUD's expressed preference to continue Sage's performance or realign

existing contracts, HUD is obligated to comply with the court's injunction to reevaluate or resolicit the contracts to cure its errors in the initial process.

As in *Tinton Falls*, the question arises whether Q Integrated could compete for a "hypothetical reopened bid" even though it has been deemed other than small with regard to an indirectly related contract. *Tinton Falls*, 800 F.3d at 1359.  In *Tinton Falls*, the procuring agency issued a solicitation for a "small business set-aside contract," and SBA found that the awardee was the only eligible offeror. *Id.* at 1355, 1359.  In reviewing a decision by a judge of this court in a protest challenging the award and SBA's determination, the Federal Circuit stated that "if [the protester] were to prevail," then the awardee would no longer qualify, no eligible bidders would remain, and the agency "would be required to reopen the bidding process." *Id.* at 1359. In such a circumstance, there was a "realistic possibility" that the agency would rebid the solicitation on an unrestricted basis. *Id.* at 1359-60.  Under the facts presented, the Federal Circuit affirmed a judge of this court's "finding that [the protester] had a substantial chance of winning a reopened bid should it prevail in its bid protest," therefore establishing standing. *Id.* at 1360 & n.3.[3]

In this case, a hypothetical reopened procurement of asset management services for Areas 7A, 1D, and 5P would also likely have to be solicited on an unrestricted basis.  As Q Integrated notes, "four of the five companies receiving small business awards under the [s]olicitation have been determined by the SBA to be other than small." Pl.'s Opp'n at 8 n.4.  This includes both Q Integrated and Sage. *Id.*  As in *Tinton Falls*, where there was a "realistic possibility" that no technically-capable small offerors would remain in contention, 800 F.3d at 1360, here, there is a realistic possibility that HUD would have to resolicit the contracts for Areas 7A, 1D, and 5P on an unrestricted basis to have sufficient options beyond one small offeror.  Q Integrated would have a "substantial chance" of receiving a contract award from an unrestricted, reopened solicitation because it would be able to compete regardless of any size determinations by SBA. As such, Q Integrated has standing to bring its protest even though OHA has determined it to be other than small for a HUD area not involved in this case.

Further, even if the reopened solicitation continued to be limited to small businesses, Q Integrated would not necessarily be eliminated from contention based on the size determination for Area 6A.  In its size determination for Sage with regard to Areas 1P and 3P, OHA stated that some size determinations can be contract-specific, particularly with regard to multiple-firm arrangements that can vary on a contract-by-contract basis, such as joint ventures or subcontractor relationships. *See Sage Acquisitions*, 2016 WL 6820412, at *20-22.  Here, although OHA found Q Integrated to be other than small under protests regarding Area 6A, *see Q Integrated* (SBA), 2016 WL 6301699, at *14, neither the SBA Area Office nor OHA made any size determinations for Q Integrated with regard to the contract areas at issue in this case.  Under the "totality of the circumstances" analysis used by OHA in its size determination for Q Integrated, the circumstances surrounding the relationship between MMREM and Q Integrated could enable Q Integrated to be considered small for a future contract under the HUD

---

[3]The court of appeals ultimately held that the protester failed to show that the SBA's determination lacked a rational basis on the merits, *Tinton Falls*, 800 F.3d at 1363, but that the protester's allegations nonetheless satisfied the standing threshold, *id.* at 1359-60.

procurement. It is thus inappropriate for the court to extrapolate the size determination for Area 6A and automatically apply it to the areas at issue in this case. Q Integrated has not been determined to be other than small with regard to Areas 7A, 1D, and 5P, and therefore might remain eligible to compete for these contracts in a reopened solicitation with a small business restriction.

In sum, the government has not demonstrated that enforcement of the court's judgment has become inequitable or that "extraordinary circumstances" have arisen to justify setting aside the judgment. Therefore, the government's motion for relief under RCFC 60(b)(5) and (b)(6) is denied.[4]

## CONCLUSION

For the reasons stated, the government's motion for relief from judgment is DENIED. The court's judgment as stated in *Q Integrated*, 126 Fed. Cl. at 148, remains in effect. Given the passage of time, however, an extension of time should be granted, and HUD's awards of the Asset Management contracts to Sage for Areas 7A, 1D, and 5P shall remain undisturbed for six months into the second option year, *i.e.*, until November 30, 2017. After that date, HUD must comply with the judgment.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge

---

[4]Because Q Integrated has been found to not have lost standing following the entry of judgment, the court also will not vacate the judgment with regard to the award of bid preparation and proposal costs to Q Integrated.