# In the United States Court of Federal Claims

## No. 16-101C

(Filed Under Seal: August 16, 2017)

(Reissued: August 24, 2017)

| | |
|---|---|
| Q INTEGRATED COMPANIES, LLC, | Bid preparation and proposal costs awarded in a bid protest; 28 U.S.C. § 1491(b)(2); 48 C.F.R. § 31.205-18(a); attorneys' fees and other expenses awardable under the Equal Access to Justice Act; 28 U.S.C. § 2412(d) |
| Plaintiff, | |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| SAGE ACQUISITIONS, LLC, | |
| Defendant-Intervenor. | |

James C. Fontana, Dempsey Fontana, PLLC, Tysons Corner, Virginia for plaintiff.  With him on the briefs were David B. Dempsey and Jeffry R. Cook, Dempsey Fontana, PLLC, Tysons Corner, Virginia.

Devin A. Wolak and Heidi L. Osterhout, Trial Attorneys, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for defendant.  With them on the briefs were Chad A. Readler, Acting Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Of counsel was Rosamond Z. Xiang, Trial Attorney, United States Department of Housing & Urban Development, Washington, D.C.

## OPINION AND ORDER[1]

---

[1]Because this opinion and order might have contained confidential or proprietary information within the meaning of Rule 26(c)(1)(G) of the Rules of the United States Court of Federal Claims ("RCFC") and the protective order entered in this case, it was initially filed under seal.  The parties were requested to review this decision and provide proposed redactions of any confidential or proprietary information.  The resulting redactions are show by brackets enclosing asterisks, *e.g.*, "[***]."

LETTOW, Judge.

Pending before the court in this post-award bid protest are an application by plaintiff, Q Integrated Companies, LLC ("Q Integrated"), for an award of bid preparation and proposal costs ("bid costs") pursuant to RCFC 54(d)(1), the Tucker Act, 28 U.S.C. § 1491(b)(2), and the court's judgment as stated in the opinion and order entered on April 20, 2016, *see Q Integrated Cos., LLC v. United States*, 126 Fed. Cl. 124, 148 (2016) ("*Q Integrated I*"), *appeal dismissed*, No. 2016-1991 (Fed. Cir. June 2, 2016), and a motion for attorneys' fees and related nontaxable expenses ("attorneys' fees") pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Q Integrated claims that it should be awarded $63,373.41 in bid costs, while the government asserts that an award of no more than $9,049 is a proper allocation of bid costs. With regard to attorneys' fees, Q Integrated seeks an award of $82,591.06. The government resists such an award based upon the contention that Q Integrated has not demonstrated that it was an eligible party under EAJA and that the government's position in the underlying litigation was substantially justified, and alternatively argues that Q Integrated is eligible to receive an award of attorneys' fees of no more than $24,729.56.

## BACKGROUND

Q Integrated filed suit in this court on January 19, 2016, protesting the Department of Housing and Urban Development's ("HUD's") award of three Asset Management contracts to Sage Acquisitions, LLC ("Sage"). *See Q Integrated I*, 126 Fed. Cl. at 127, 138. On April 20, 2016, the court granted Q Integrated's motion for judgment on the administrative record in part and denied it in part, and granted the government's and Sage's cross-motions for judgment on the administrative record in part and denied them in part. *See id.* at 148. Specifically, "[t]he court determined that HUD's evaluations of Q Integrated's and Sage's past performance information were not arbitrary and capricious, . . . but found that HUD did not hold meaningful discussions with Q Integrated." *Q Integrated Cos., LLC v. United States*, 131 Fed. Cl. 125, 129 (2017) ("*Q Integrated II*") (citing *Q Integrated I*, 126 Fed. Cl. at 140-46), *appeal dismissed*, No. 2017-2090 (Fed. Cir. July 24, 2017). The court also concluded that Q Integrated was prejudiced by HUD's errors and omissions during the discussion process, determining that "[i]f the discussions with Q Integrated had been accurate and the ratings had not been adjusted contrary to the solicitation, Q Integrated could have revised its proposal and would have had a substantial chance of receiving the contract award." *Id.* (citing *Q Integrated I*, 126 Fed. Cl. at 146-47). In addition to injunctive relief, which the court calibrated to allow a limited period of contract performance by Sage that was already underway, the court awarded Q Integrated "its reasonable costs incurred in bid preparation and proposal" and specified a schedule for submission of those costs and for the government's response. *Q Integrated I*, 126 Fed. Cl. at 148.

Q Integrated filed its application for bid costs on May 18, 2016, *see generally* Pl.'s Appl. for Bid Preparation and Proposal Costs ("Pl.'s Appl."), ECF No. 82, and filed its motion for attorneys' fees on July 19, 2016, *see generally* Pl.'s Mot. for Att'ys' Fees and Related Nontaxable Expenses ("Pl.'s Mot."), ECF No. 90. On June 22, 2016, the government filed a motion for relief from the court's judgment pursuant to RCFC 60(b), claiming that Q Integrated did not have standing to bring its protest because it had been deemed "other than small" by the Small Business Administration ("SBA") in a size determination for a different area of the HUD procurement. *See Q Integrated II*, 131 Fed. Cl. at 130. Size challenges to Sage were also

pending before SBA. *Id*. The court suspended briefing on the motion for relief from judgment, as well as the application for bid costs and motion for attorneys' fees, on August 18, 2016, "pending the resolution of SBA size appeals for Q Integrated and Sage for areas of the HUD procurement that were not at issue in this case." *Q Integrated Cos., LLC v. United States*, 132 Fed. Cl. 638, __, 2017 WL 2859222, at *2 (Fed. Cl. July 5, 2017) ("*Q Integrated III*") (citations omitted).[2] Ultimately, SBA ruled that Sage also was not a qualifying small business for HUD areas not involved in this protest. *See Q Integrated II*, 131 Fed. Cl. at 130.

After the SBA size appeals were resolved, the court turned to the government's motion for relief from judgment. On March 27, 2017, the court denied the government's motion, "finding that Q Integrated remained an interested party and therefore maintained standing to bring its protest because the SBA's size determinations eliminated virtually all small-business-qualified offerors." *Q Integrated III*, 132 Fed. Cl. at __, 2017 WL 2859222, at *2 (citing *Q Integrated II*, 131 Fed. Cl. at 132-34). That same day, the court lifted the suspension of briefing on Q Integrated's application for bid costs and motion for attorneys' fees. *See* Scheduling Order of Mar. 27, 2017, ECF No. 113. On May 25, 2017, the government appealed the court's denial of its motion for relief from judgment. The court again suspended its consideration of Q Integrated's application for bid costs and motion for attorneys' fees while the appeal was pending before the Federal Circuit, *see Q Integrated III*, 132 Fed. Cl. at __, 2017 WL 2859222, at *5, but shortly thereafter, the parties stipulated to a voluntary dismissal of the government's appeal on July 24, 2017, and the mandate of the court of appeals was issued the same day.

With the removal of the jurisdictional impediment stemming from the now-dismissed appeal by the government, Q Integrated's application for bid costs and motion for attorneys' fees are ready for the court's disposition.

## ANALYSIS

### A. Bid Preparation and Proposal Costs

Under the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, § 12, 110 Stat. 3870, 3874 (Oct. 19, 1996), in bid protest cases, bid costs are the only form of monetary relief that this court is empowered to award. 28 U.S.C. § 1491(b)(2). Bid preparation and proposal costs are defined by regulation as "costs incurred in preparing, submitting, and supporting bids and proposals (whether or not solicited) on potential [g]overnment or non-[g]overnment contracts." 48 C.F.R. ("FAR") § 31.205-18(a). Compensable bid costs include "those in the nature of researching specifications, reviewing bid forms, examining cost factors, and preparing draft and actual bids." *Geo-Seis Helicopters, Inc. v. United States*, 79 Fed. Cl. 74, 80 (2007) (citing *Lion Raisins, Inc. v. United States*, 52 Fed. Cl. 629, 631 (2002) ("*Lion Raisins I*")). "Such costs are recoverable only if three conditions are satisfied: (i) the agency has committed a prejudicial error in conducting the procurement; (ii) that error caused the protester to incur unnecessarily bid preparation and proposal costs; and (iii) the

---

[2]The Asset Management procurement included a number of small business set-aside contracts, including the three areas at issue in this case and the areas at issue in the aforementioned size appeals. *See Q Integrated I*, 126 Fed. Cl. at 129; *Q Integrated II*, 131 Fed. Cl. at 129-30.

costs to be recovered are both reasonable and allocable, *i.e.*, incurred specifically for the contract in question." *Reema Consulting Servs. v. United States*, 107 Fed. Cl. 519, 532 (2012) (footnote omitted). The plaintiff bears the burden of proving that it is entitled to recover its costs. *Geo-Seis*, 79 Fed. Cl. at 80 (citing *Lion Raisins I*, 52 Fed. Cl. at 631). The first condition is not at issue here, as the court previously held that HUD committed prejudicial error by conducting inadequate discussions with Q Integrated during the procurement. *See Q Integrated I*, 126 Fed. Cl. at 144-47.

### 1. Necessity of costs incurred.

The government argues that Q Integrated is not entitled to an award of bid costs because such costs were not unnecessarily incurred. Def.'s Resp. to Pl.'s Appl. for Bid Preparation and Proposal Costs ("Def.'s Resp. to Appl.") at 6, ECF No. 120. The government claims that all of Q Integrated's costs in preparing its proposal were necessary because Q Integrated used "nearly identical" proposals for ten contract areas, modifying the proposals primarily respecting "area-specific component[s]," but protested only three areas in this case. *See id.* Q Integrated also received one award for the HUD procurement, prompting the government to further argue that Q Integrated benefited from all of the bid costs it incurred, so the company must bear them itself. *See id.*

The government's arguments are misplaced. Bid costs are unnecessarily incurred when the agency commits an error in the procurement process that prejudices the disappointed bidder. *See Reema Consulting Servs.*, 107 Fed. Cl. at 533. The court specifically held here that HUD's failure to conduct meaningful discussions for the three contract areas of the protest prejudiced Q Integrated by "materially and adversely affect[ing] its chance to receive the contract awards." *Q Integrated I*, 126 Fed. Cl. at 146-47. Q Integrated therefore unnecessarily incurred bid costs with respect to the three contract areas at issue in this case. The fact that a similar proposal was used in a winning bid for one area is of no relevance to this protest; Q Integrated devoted at least some of the bid costs it incurred to proposals rendered futile by HUD's errors in the procurement process. Further, the court awarded bid costs to Q Integrated because injunctive relief was time-limited and therefore insufficient to fully remedy the harm to the company. *See Q Integrated I*, 126 Fed. Cl. at 148 (citations omitted). It is within the court's discretion to grant these forms of relief, *see CMS Contract Mgmt. Servs. v. United States*, 123 Fed. Cl. 534, 537 (2015), and the cost award is directly tied to HUD's prejudicial errors during the procurement. Therefore, Q Integrated is entitled to at least some measure of bid costs that it unnecessarily incurred.

### 2. Allocation of costs.

Although Q Integrated has demonstrated that at least some of its bid costs were incurred unnecessarily, the court must determine the proper allocation of bid costs attributable to the three contract areas at issue in this case. A claimed cost is allocable if it "[i]s incurred specifically for the contract," or if it "[b]enefits both the contract and other work, and can be distributed to them in reasonable proportion to the benefits received." FAR § 31.201-4(a), (b). More specifically, a cost is allocable if "a sufficient 'nexus' exists between the cost and a government contract." *Boeing N. Am., Inc. v. Roche*, 298 F.3d 1274, 1281 (Fed. Cir. 2002) (quoting *Lockheed Aircraft Corp. v. United States*, 375 F.2d 786, 794 (Ct. Cl. 1967)). In its original application for bid costs, Q Integrated sought to recover all of the costs it incurred in connection with the HUD

4

procurement.  *See generally* Pl.'s Appl.; Pl.'s Reckoning of Bid Preparation and Proposal Costs ("Pl.'s Reckoning"), ECF No. 82-1.  The government has argued, however, that Q Integrated is only entitled to bid costs for the three contract areas at issue in this case, not for all ten areas for which Q Integrated submitted bids, which would result in an award of 30% of Q Integrated's total bid costs incurred.  *See* Def.'s Resp. to Appl. at 12.  Q Integrated countered in its reply that it is entitled to bid costs for all of the areas for which it did not receive an award, *i.e.*, nine out of the ten submitted proposals, which would result in an award of 90% of total bid costs.  Pl.'s Reply to Def.'s Resp. to Pl.'s Appl. for Bid Preparation and Proposal Costs ("Pl.'s Appl. Reply") at 4, 6, ECF No. 125.

In this instance, a 30% allocation of bid costs is appropriate.  Even though all of the bid costs incurred by Q Integrated are attributable to each area for which Q Integrated submitted a proposal (*i.e.*, all of the costs were necessarily incurred for each proposal, regardless of how many proposals were submitted), such costs must be allocated among the proposals "in reasonable proportion to the benefits received."  FAR § 31.201-4(b).  Since Q Integrated used much the same proposal for all ten areas, *see* Def.'s Resp. to Appl., Attach. A (Decl. of Craig Karnes, Principal Administrative Contracting Officer, HUD (June 8, 2017)) ¶ 4,[3] it is reasonable to allocate bid costs in equal proportion among the ten areas.  Although Q Integrated did not receive nine of the ten contracts for which it submitted proposals, it only protested the award for three areas.[4]  The court's holding in its judgment on the administrative record is limited to those three areas.  *See Q Integrated I*, 126 Fed. Cl. at 146 ("[T]he court concludes that the government's discussions with Q Integrated involved a violation of regulation or procedure . . . *with respect to the procurement awards at issue*.") (internal quotation marks and citation omitted) (emphasis added).  Therefore, the court shall only award Q Integrated bid costs that are allocable to the three areas at issue in its protest, which account for 30% of the bid costs incurred by Q Integrated with respect to the entire HUD procurement.

*3. Cost award.*

In light of the 30% allocation, the court must determine whether Q Integrated's requested total costs are reasonable.  A claimed cost is generally viewed as reasonable "if, in its nature and amount, it does not exceed that which would be incurred by a prudent person in the conduct of competitive business."  FAR § 31.201-3(a).  Q Integrated sought $145,464.92 in bid costs in its initial application, specifically seeking to recover $71,384.52 in direct labor costs, $42,354.00 in indirect labor costs, $28,894.99 in consultant costs, and $2,831.41 in other costs related to travel, copying, printing, and shipping with regard to the procurement.  Pl.'s Reckoning at 4-6.  In

---

[3]Mr. Karnes did note that "the Technical Proposal . . . contained a significant amount of tailoring by area."  Decl. of Craig Karnes ¶ 4.

[4]On the eve of the hearing on the parties' cross-motions for judgment on the administrative record, Q Integrated filed a motion to amend its complaint to add four additional areas of the HUD procurement to its protest.  *See Q Integrated I*, 126 Fed. Cl. at 139 n.17.  The court denied the motion pursuant to RCFC 15(a)(2) because Q Integrated had failed to put those areas at issue earlier in the litigation, work on the contracts had already begun, and Q Integrated would have had to file a new bid protest regarding the additional areas, which it had not done (and did not do thereafter).  *Id.*

addition to its objections regarding the allocation of these costs across multiple contract areas in the procurement, the government specifically objected to labor costs incurred prior to HUD's issuance of the solicitation, the per-hour labor rate applied by Q Integrated for its two principals, Michael Ognek and Christopher Ognek, the rate used to calculate indirect labor costs as a percentage of direct labor costs, certain consulting fees, and certain travel and shipping costs. *See* Def.'s Resp. to Appl. at 12-19.

    *(a.) Labor costs.*

    Respecting labor costs, Q Integrated has reduced its request in response to the government's objections and seeks $43,702.75 in direct labor costs and $16,986.38 in indirect labor costs. *See* Pl.'s Appl. Reply at 4-5. Although Q Integrated's principals did not maintain contemporaneous time records, Michael Ognek, Q Integrated's president, recreated the time that he and Christopher Ognek, Q Integrated's vice president, worked on Q Integrated's proposal for the HUD procurement, relying on calendar entries, notes, and personal recollection. *See* Pl.'s Appl. at 2; Pl.'s Reckoning at 2; Decl. of Michael Ognek (May 18, 2016) ¶ 10, ECF No. 82-8; Decl. of Christopher Ognek (May 18, 2016) ¶ 8, ECF No. 83. Such summaries that are based on records maintained by the business are sufficient to support a claim for reasonable bid costs, particularly with regard to small businesses that do not regularly maintain contemporaneous time records. *See Geo-Seis*, 79 Fed. Cl. at 80; *Beta Analytics Int'l, Inc. v. United States*, 75 Fed. Cl. 155, 163 (2007).

    The government objects that Q Integrated's time records improperly include time incurred before the solicitation was issued on July 25, 2014. Def.'s Resp. to Appl. at 12-13; Pl.'s Appl., Ex. A-1 at 3-4, ECF No. 82-2. Certain preparatory bid costs can be incurred, however, before a solicitation is officially released. *See Naplesyacht.com, Inc. v. United States*, No. 04-252C, 2005 WL 6112642, at *2 (Fed. Cl. Mar. 31, 2005) ("Although costs must support an initial or revised proposal, there is no requirement that a solicitation be issued before costs may be recovered as bid and proposal costs.") (citations omitted). Q Integrated's requested hours prior to the issuance of the solicitation are reasonable here because HUD released a draft version of its performance work statement on June 19, 2013, upon which Q Integrated relied to begin developing its proposal. Pl.'s Appl. Reply at 4.

    Following the government's objections to Q Integrated's use of market rates to calculate direct labor cost, Q Integrated revised its application to apply an hourly rate based on Michael Ognek's and Christopher Ognek's annual compensation for the years they worked on the HUD proposal, as reflected in the company's tax filings for each year, and "calculated by dividing [each] employee's total compensation by 2,080 (52 weeks at 40 hours)." *See* Pl.'s Appl. Reply at 4-5 & n.2. This approach is reasonable, *see Gentex Corp. v. United States*, 61 Fed. Cl. 49, 54 (2004) ("[B]id proposal costs 'must be based upon *actual rates of compensation* . . . and not market rates.'") (citations omitted), and the court accepts that Q Integrated incurred $43,702.75 in direct labor costs in preparing its proposal.

    With regard to indirect labor costs, Q Integrated has revised its initial request by adopting the government's proposed indirect labor rate of [***], resulting in $16,986.38 in indirect labor costs. Pl.'s Appl. Reply at 5. The court accepts this rate as reasonable.

*(b.) Other costs.*

Q Integrated initially sought $28,894.99 for fees paid to two consultants, [***] and [***]. Pl.'s Reckoning at 4-5; *see also* Pl.'s Appl., Ex. A-4, ECF No. 82-5 ([***] invoices for work performed for Q Integrated); Pl.'s Appl., Ex. A-5, ECF No. 82-6 ([***] engagement agreement and invoice for work performed for Q Integrated). Following the government's objection that the fees paid to [***] were incurred several months after Q Integrated's proposal for the HUD procurement was submitted, *see* Def.'s Resp. to Appl. at 16, Q Integrated agreed to withdraw its request for those fees, totaling $15,518.99, *see* Pl.'s Appl. Reply at 6; Pl.'s Reckoning at 5. Q Integrated also agreed to reduce the requested fees for [***] to $7,680, reflecting the 38.4 hours of consulting work that was applicable to the HUD procurement. Pl.'s Appl. Reply at 6; *see also* Decl. of Craig Karnes ¶ 8(a).

Q Integrated also seeks other costs "directly related to the [p]rocurement for travel, copying and printing and shipping and postage expenses." Pl.'s Reckoning at 5. These costs include travel expenses related to a "strategy session" held by Q Integrated and its subcontractor to finalize its proposal submission, as well as certain FedEx charges. *See* Pl.'s Appl., Ex. A-6, ECF No. 82-7; Pl.'s Appl. Reply at 6. Following the government's objections, Q Integrated agreed to remove its requests for two expenses that were not substantiated by credit card statements, reducing Q Integrated request for direct costs to $2,045.77. Pl.'s Appl. Reply at 6.

Both the consulting fees and direct costs sought by Q Integrated fall within generally recognized categories of recoverable bid costs. *See, e.g.*, *Beta Analytics*, 75 Fed. Cl. at 166-68 (awarding reasonable consultant fees for work allocable to the proposal, as reflected in contemporaneous invoices); *Lion Raisins I*, 52 Fed. Cl. at 631 ("Expenses compensable as bid preparation costs are those in the nature of researching specifications, reviewing bid forms, examining cost factors, and preparing draft and actual bids.") (citations omitted). Q Integrated has fulfilled its burden of showing these costs, as amended in its reply, to be reasonable, and thus is entitled to $9,725.77 in other direct costs pre-allocation.

*(c.) Allocated award of bid costs.*

In sum, Q Integrated has incurred reasonable bid costs of $70,414.90 respecting its proposals for ten contract areas. Pl.'s Appl. Reply at 6. Applying a rate of 30% to properly allocate these costs to the three areas at issue in this case, Q Integrated is awarded $21,124.47 in bid costs.

### B. Attorneys' Fees under the Equal Access to Justice Act

*1. EAJA criteria.*

EAJA provides:

[A] court shall award to a prevailing party[,] other than the United States[,] fees and other expenses . . . incurred by that party in any civil action (other than cases

sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Eligibility for such an award requires that: (1) the claimant be a "prevailing party;" (2) the government's position was not "substantially justified;" (3) no "special circumstances make an award unjust;" (4) any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement; and (5) if the qualifying party is a corporation or other organization, it must have had less than or equal to $7,000,000 in net worth or 500 employees at the initiation of the litigation. 28 U.S.C. § 2412(d); *see also Commissioner, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 158 (1990); *Hyperion, Inc. v. United States*, 118 Fed. Cl. 540, 544 (2014); *KWV, Inc. v. United States*, 113 Fed. Cl. 534, 537 (2013). The plaintiff bears the burden of demonstrating that it meets these requirements, *Al Ghanim Combined Grp. Co. v. United States*, 67 Fed. Cl. 494, 496 (2005), except that the government has the burden of proof respecting the second criterion, *i.e.*, establishing that its position was substantially justified, *see White v. Nicholson*, 412 F.3d 1314, 1316 (Fed. Cir. 2005); *Hillensbeck v. United States*, 74 Fed. Cl. 477, 479-80 (2006), *appeal dismissed*, 226 Fed. Appx. 998 (Fed. Cir. 2007); *Al Ghanim Combined Grp.*, 67 Fed. Cl. at 496.

The government does not contest the applicability of the first, third, and fourth criteria in this instance, but the government disputes the other two criteria. *See generally* Def.'s Resp. to Pl.'s Mot. for Att'y Fees and Expenses ("Def.'s EAJA Resp."), ECF No. 119. The government first argues that Q Integrated's motion failed to affirmatively establish that it met the net worth or employee-count requirements. *Id.* at 6-7. The government next maintains that its position prior to and during litigation was substantially justified. *Id.* at 8-15. In the alternative, the government argues that Q Integrated is not entitled to recover the full amount of requested fees because it was only partially successful in its motion for judgment on the administrative record, and because it has not sufficiently demonstrated that all of the claimed fees and expenses are attributable to this bid protest. *Id.* at 15-22.

*2. Net worth and size.*

The government contends that Q Integrated failed to sufficiently establish its size and net worth because the sole evidence of these criteria that it submitted to the court with its motion was an affidavit signed by Christopher Ognek, Q Integrated's majority owner and vice president. Def.'s EAJA Resp. at 7; *see also* Pl.'s Mot., Ex. 1, Attach. A., ECF No. 90-1. Relying on *Fields v. United States*, 29 Fed. Cl. 376, 382-83 (1993), *aff'd*, 64 F.3d 676 (Fed. Cir. 1995), the government asserts that "'a self-serving, non-probative affidavit alone' is insufficient to establish party eligibility" for an EAJA award. Def.'s EAJA Resp. at 7 (quoting *Fields*, 29 Fed. Cl. at 382).

With its reply, Q Integrated submitted a supplemental declaration and additional documentation that affirmatively establish that Q Integrated meets the requisite criteria for eligibility to receive an award under EAJA. *See* Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. for Att'y Fees and Expenses ("Pl.'s EAJA Reply") at 1-2, ECF No. 126. Q Integrated specifically appends to its reply a balance sheet reflecting Q Integrated's assets and liabilities as of January

19, 2016, the date the complaint was filed, excerpts from Q Integrated's 2015 federal tax filings, and Q Integrated's payroll records for the payroll period of January 11, 2016 to January 24, 2016. *See* Suppl. Decl. of Michael Ognek, Exs. S-1, S-2, and S-3, ECF No. 126-2. These documents indicate that Q Integrated had total assets of $[***] at the end of 2015 and employed [***] people as of the filing of the complaint. *See* Suppl. Decl. of Michael Ognek, Exs. S-2 and S-3.[5] Even though this financial information was submitted with Q Integrated's reply rather than with its initial motion, the supplementation is appropriate. *See, e.g.*, *Scarborough v. Principi*, 541 U.S. 401, 416-19 (2004) (holding that the "relation-back" principle permits an EAJA applicant to supplement or amend a timely but incomplete application); *Bazalo v. West*, 150 F.3d 1380, 1383 (Fed. Cir. 1998) ("[W]hile the time limitation [on filing an EAJA application] should be strictly met, the content of the EAJA application should be accorded some flexibility."); *Dalles Irrigation Dist. v. United States*, 91 Fed. Cl. 689, 700 n.3 (2010) (applying *Scarborough* and *Bazalo*).

Consequently, while the government may have been correct in observing that the information contained in Q Integrated's initial motion was insufficient, Q Integrated ultimately has met its burden of establishing eligibility to recover attorneys' fees under EAJA.

*3. "Substantially justified."*

To establish that its position was "substantially justified," the government bears the burden of showing that its position was "'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988). "[S]ubstantially justified means there is a dispute over which 'reasonable minds could differ.'" *Norris v. Securities and Exch. Comm'n*, 695 F.3d 1261, 1265 (Fed. Cir. 2012) (quoting *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005)). The court does not inquire into the government's position on every individual issue in the case, *Gargoyles, Inc. v. United States*, 45 Fed. Cl. 139, 148 (1999), *appeal dismissed*, 232 F.3d 910 (Fed. Cir. 2000), but rather "make[s] a judgment call whether the government's overall position [both prior to and during the litigation] had a reasonable basis in both law and fact." *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991); *see also Blakley v. United States*, 593 F.3d 1337, 1341 (Fed. Cir. 2010) ("In the context of EAJA claims, we have held that the 'position of the United States' in judicial proceedings refers to the United States' position 'throughout the dispute, including not only its litigating position but also the agency's administrative position.'") (quoting *Doty v. United States*, 71 F.3d 384, 386 (Fed. Cir. 1995)). The government's position may be substantially justified even if it is ultimately incorrect. *Miles Constr., LLC v. United States*, 113 Fed. Cl. 174, 178 (2013) (citing *Manno v. United States*, 48 Fed. Cl. 587, 589 (2001)). The appropriate inquiry is "not what the law now is, but what the [g]overnment was substantially justified in believing it to have been." *Loomis v. United States*, 74 Fed. Cl. 350, 355 (2006) (quoting *Pierce*, 487 U.S. at 561). The substantial justification standard requires less than winning the case and more than being "merely undeserving of sanctions for frivolousness." *Pierce*, 487 U.S. at 566.

---

[5]The balance sheet submitted by Q Integrated indicates that the company's net worth as of January 19, 2016 was $[***]. Suppl. Decl. of Michael Ognek, Ex. S-1. Since this balance sheet was generated by QuickBooks accounting software and is unaudited, however, the court cannot rely on it in determining whether Q Integrated is a qualifying party. *See Hyperion*, 118 Fed. Cl. at 544-45; *Scherr Constr. Co. v. United States*, 26 Cl. Ct. 248, 250-51 (1992).

The government argues that HUD's determination that discussions with Q Integrated regarding past performance were unnecessary was substantially justified because HUD relied on the overall past performance rating of "Fair/Some Confidence," a "passing" rating that on its own did not constitute adverse past performance information. *See* Def.'s EAJA Resp. at 9-11. In the decision on the merits, however, the court determined that the sub-ratings of "Not Relevant" assigned to Q Integrated's past performance references "constituted 'significant weaknesses' or 'adverse past performance information' within the meaning of FAR § 15.306(d)(3) and the specific definitions in the solicitation." *Q Integrated I*, 126 Fed. Cl. at 146. The solicitation specifically provided that adverse past performance information includes "information that supports a less than satisfactory rating on *any evaluation element* or any unfavorable comments received from sources without a formal rating system." *Id.* at 131 (internal quotation marks and citation omitted) (emphasis added). Relevancy was an evaluation element within the terms of the solicitation, *see id.* at 145, and the "Not Relevant" ratings were the primary reason for HUD assigning a "Fair/Some Confidence" rating to Q Integrated's past performance, indicating HUD's low expectation of Q Integrated's successful performance of the contracts, *see id.* at 146. The effect of the relevancy ratings on the overall past performance rating rendered the relevancy ratings "deficiencies" or "significant weaknesses," which HUD was obligated to raise with Q Integrated during discussions pursuant to FAR § 15.306(d)(3). *See id.* Even though a "Fair/Some Confidence" past performance rating was technically "passing," in that it did not immediately disqualify Q Integrated from consideration for a contract award, the government's argument obscures the fact that the "Not Relevant" ratings adversely affected the overall past performance rating, "materially reduc[ing] Q Integrated's chance of receiving the contract awards." *Id.* The "Not Relevant" ratings fall squarely within the definition of adverse past performance information under the solicitation and FAR § 15.306(d)(3) regardless of the overall past performance rating, and therefore the government was not justified in failing to conduct discussions with Q Integrated regarding these ratings.

The government's reliance on *REO Sol., Inc. v. United States*, 125 Fed. Cl. 659 (2016), is unavailing. In *REO*, the protest of a disappointed bidder in another area of the HUD procurement was dismissed for lack of standing. *Id.* at 665. The bidder was deemed not to have had a substantial chance of receiving the contract award because it was the highest-price offeror, regardless of a proffered series of alternative scenarios in which the bidder argued that its past performance rating should have been "Excellent/High Confidence" rather than "Fair/Some Confidence." *See id.* at 663-65. In evaluating these scenarios, the court stated that "[t]he fact that the agency ultimately gave REO a confidence rating of Fair/Some Confidence does not, however, rise to the level of a deficiency or significant weakness." *Id.* at 664. The government latches on to this statement, claiming that it constitutes a reasonable difference of opinion regarding "what must be discussed under FAR [§] 15.306 when an offeror received an overall past-performance rating of 'Fair/Some Confidence' under the evaluation scheme established by [the HUD solicitation]." Def.'s EAJA Resp. at 13. There is not, however, any reasonable comparability between the court's evaluation of the discussion issue in this case and the evaluation in *REO* that would render the government's position substantially justified. *See DGR Assocs., Inc. v. United States*, 690 F.3d 1335, 1341 (Fed. Cir. 2012).

First, the discussions issue had no impact on the court's decision in *REO* because REO was deemed not to have a substantial chance of receiving a contract award. *See REO*, 125 Fed.

Cl. at 665.  There were nine eligible offerors for that particular contract area, and REO was the highest-priced offeror by several million dollars, so the court determined that regardless of any errors in the proposal process, including the overall past performance rating and accompanying discussions, REO would not have received an award.  *Id.* at 661, 664-65.  On the other hand, Q Integrated was either the lowest-priced or second-lowest-priced offeror for the contract areas at issue in its protest, and had a substantial chance of receiving the award but for HUD's errors during the discussion phase.  *See Q Integrated I*, 126 Fed. Cl. at 146-47.  The discussions issue was central to the court's decision here, and the court in turn evaluated it fully, whereas the court in *REO* only gave a passing mention to the discussion requirements.

Further, in *REO*, the court found that the overall past performance rating of "Fair/Some Confidence" did not, in itself, constitute a deficiency or significant weakness that would require discussions.  *See REO*, 125 Fed. Cl. at 664.  REO's challenge amounted to "mere disagreement with the agency" over its overall past performance rating where there was no evidence of adverse past performance information in the sub-categories to determine the overall rating.  *See id.* ("Certainly there was no adverse past performance noted, as REO had no past performance to speak of and its subcontractor received high marks.").  Here, however, the court did not assess the overall "Fair/Some Confidence" past performance rating assigned to Q Integrated, but rather held that the "Not Relevant" sub-ratings assigned to Q Integrated's past performance references were adverse past performance information that were required to be disclosed in discussions because these ratings had a specific downward effect on the overall past performance rating.  *See Q Integrated I*, 126 Fed. Cl. at 146.  Even if a rating of "Fair/Some Confidence" would be considered "passing," as the government claims here, *see* Def.'s EAJA Resp. at 11, the evidence of adverse past performance that HUD did not discuss with Q Integrated distinguishes this case from the circumstances in *REO*, in which there was no such information to be discussed.  Unlike in *DGR*, where there was substantial disagreement between and among agencies and courts regarding the interpretation of a statute and its accompanying regulations, *see DGR*, 60 F.3d at 1341-42, the court here and in *REO* assessed distinct issues regarding discussions under FAR § 15.306(d)(3) and the terms of the solicitation, specifically distinguishing between overall "passing" ratings and adverse sub-factor ratings.  Overall, the court's decision in *REO* is not in conflict with the court's merits determination here and therefore does not serve to justify the government's position.

The government further asserts that HUD's failure to conduct adequate discussions was justified because Q Integrated should have known that past performance information regarding its work as a subcontractor would be downgraded in the evaluation process without discussions taking place.  *See* Def.'s EAJA Resp. at 11-13.  Regardless, the "Not Relevant" ratings constituted adverse past performance information that needed to be disclosed during discussions.  *See Q Integrated I*, 126 Fed. Cl. at 146.  The government was not relieved of its explicit duty under the solicitation and FAR § 15.306(d)(3) to conduct discussions because Q Integrated purportedly should have known what the substance of such discussions would be.[6]

_____

[6]The government also attempts to argue that its position was substantially justified because Q Integrated received a contract award in an area of the procurement not at issue in this protest.  Def.'s EAJA Resp. at 13.  That award is not relevant to whether the government's position was substantially justified in this case because Q Integrated received the award after another offeror was disqualified from consideration, regardless of the same errors in the

Accordingly, as the government has failed to show that its position was substantially justified, Q Integrated is entitled to an award of attorneys' fees pursuant to EAJA.

    *4. Partial success on the merits.*

The government next argues that Q Integrated is not entitled to a full award of attorneys' fees under EAJA because "it was only partially successful" in its protest. Def.'s EAJA Resp. at 15. The government specifically argues that "Q Integrated should be limited to recovering, at most, one-third of the reasonable and incurred amount of fees because the [c]ourt upheld HUD's evaluations of both Q Integrat[ed] and Sage" and only found for Q Integrated on the issue of the adequacy of discussions. *Id.*

The Supreme Court has held that when a plaintiff's claims involve "a common core of facts or [are] based on related legal theories," "the most critical factor" a court must consider in determining whether to adjust an award of reasonable attorneys' fees is "the degree of success obtained" in the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 435-36 (1983). A plaintiff need not prevail on every contention raised in the lawsuit to recover a full fee, so long as the plaintiff has been awarded "substantial relief." *See id.* at 440. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.* at 435. However, "[i]f . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436. In *Hubbard v. United States*, 480 F.3d 1327 (Fed. Cir. 2007), the Federal Circuit clarified that "a ratio [of damages sought to damages awarded] provides little aid in determining what is a reasonable fee in light of all the relevant factors." *Id.* at 1333-34 (quoting *Hensley*, 461 U.S. at 435 n.11 (internal citation omitted)). Rather, the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.

This court has concluded in several cases that a plaintiff experiences "partial or limited success" where the plaintiff fails on the majority of its claims or recovers significantly less damages than the amount it originally sought. *See, e.g.*, *Dalles Irrigation Dist.*, 91 Fed. Cl. at 703-04 (reducing attorneys' fees where plaintiff succeeded on three of its seven claims and recovered only 18% of the damages sought); *CEMS, Inc. v. United States*, 65 Fed. Cl. 473, 483-84 (2005) (reducing award where plaintiff prevailed on nine of its thirty claims and received slightly less than 24% of the damages it sought); *Filtration Dev. Co., LLC v. United States*, 63 Fed. Cl. 612, 627 (2005) (reducing plaintiff's award where court enjoined only one-quarter of the procurement at issue); *Baldi Bros. Constructors v. United States*, 52 Fed. Cl. 78, 82-84 (2002) (reducing attorneys' fees incurred in damages trial where plaintiff recovered 55% of the damages sought and the court found that "many of plaintiff's claimed costs" were "subsumed" in its other claims or were "otherwise unsubstantiated").

---

procurement that the court identified in this protest. *See Q Integrated I*, 126 Fed. Cl. at 138. The belated award in an unrelated area does not absolve the government of its unjustified errors here.

Here, the court finds that Q Integrated's degree of success obtained in its bid protest is more appropriately characterized as "substantial relief" than "partial or limited success." Although the court found that HUD's evaluation of Q Integrated's and Sage's past performance information was not arbitrary and capricious, *see Q Integrated I*, 126 Fed. Cl. at 140-43, the court held that HUD conducted inadequate discussions with Q Integrated regarding its past performance information in violation of FAR § 15.306(d) and the terms of the solicitation, and that this violation prejudiced Q Integrated, *see id.* at 144-47.  In light of Q Integrated's success on the merits of its protest, the court awarded injunctive relief to the fullest possible extent in light of the timing of the court's decision *vis-à-vis* the beginning of contract performance, and also awarded bid preparation and proposal costs. *See id.* at 147-48.  Q Integrated's failure on two alternative protest grounds does not diminish its overall success in its protest, *i.e.*, that the HUD procurement was flawed and resulted in prejudice to Q Integrated, and accordingly the court awarded full relief.  Therefore, since Q Integrated received an "excellent result[]" in its protest rather than "limited success," *Hensley*, 461 U.S. at 435-36, Q Integrated is entitled to a full award of attorneys' fees under EAJA.

### 5. *Amount of award.*

Q Integrated requests attorneys' fees of $77,129.72, reflecting 401.55 hours of attorney time at the rate of $192.08 per hour, as well as related nontaxable expenses of $3,128.95.  *See* Pl.'s Mot. at 6-7.[7]  The government objects to Q Integrated's fee request on the grounds that (1) Q Integrated should not recover fees for time spent on its motion to amend the complaint that was denied by the court, (2) certain claimed fees were incurred with respect to actions before the SBA rather than this court, and (3) the documentation of related expenses is vague such that it cannot be determined that these expenses were incurred with respect to Q Integrated's protest before this court rather than a concurrent action before the SBA.  Def.'s EAJA Resp. at 18-22.

### (a.) *Cost of living adjustment.*

Under EAJA, a $125 per-hour cap applies to attorneys' fees "unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A).  To receive a cost of living adjustment ("COLA") in its award, a plaintiff must "allege[] that the cost of living has increased, as measured by the Department of Labor's Consumer Price Index ('CPI')," *California Marine Cleaning, Inc. v. United States*, 43 Fed. Cl. 724, 733 (1999), and supply the court with relevant CPI data, *see Lion Raisins, Inc. v. United States*, 57 Fed. Cl. 505, 519 (2003) ("*Lion Raisins II*") (citing *Weaver-Bailey Contractors, Inc. v. United States*, 24 Cl. Ct. 576, 580-81 (1991)).  The court should "freely grant[]" adjustments based on the cost of living.  *Infiniti Info. Sols., LLC v. United States*, 94 Fed. Cl. 740, 751 (2010) (citations omitted).  The government does not contest Q Integrated's COLA claim or method of calculations.

---

[7]Q Integrated's motion incorrectly states that it seeks $80,258.67 in attorneys' fees.  *See* Pl.'s Mot. at 6.  This figure reflects the total fees and expenses sought by Q Integrated.  *See* Pl.'s Mot., Ex. 2.  For clarity, the court has separated the amount of attorneys' fees from the amount of related expenses in its analysis.

A base date of March 1996 is the starting point used to calculate the COLA because EAJA was amended that month to increase the hourly statutory rate for attorneys' fees from $75 to $125.  *California Marine*, 43 Fed. Cl. at 733-34; *see also Geo-Seis*, 79 Fed. Cl. at 79; *Lion Raisins II*, 57 Fed. Cl. at 519.  "The end date for calculating the COLA is the 'final date on which legal services were rendered.'"  *Geo-Seis*, 79 Fed. Cl. at 79 (citations omitted).  The Federal Circuit has also endorsed using "a single mid-point inflation adjustment factor applicable to services performed before and after that mid-point" in appropriate circumstances.  *Chiu*, 948 F.2d at 722 n.10 (citation omitted); *see also Geo-Seis*, 79 Fed. Cl. at 79 (calculating the COLA using a mid-point adjustment factor).

Q Integrated's attorneys performed services from January 2016 to July 2016, using April 2016 as a mid-point to calculate the COLA.  Pl.'s Mot. at 6-7.  April 2016 is an appropriate mid-point, and the government does not contest the use of April 2016 as a COLA end date.  Accordingly, based upon an increase in the CPI from 155.70 in March 1996 to 239.26 in April 2016,[8] the proper rate is $192.08.[9]  The court shall apply this hourly rate in determining total attorneys' fees to be awarded to Q Integrated.

*(b.) Attorneys' chargeable time.*

Q Integrated requests fees for 401.55 hours of attorney time, including time spent on the litigation of the merits and the preparation of the application for bid costs and the motion for attorneys' fees.  Pl.'s Mot. at 6 & Ex. 2.  The government criticizes this time as excessive because it includes certain hours spent preparing a motion to amend the complaint that was ultimately denied by the court, as well as other hours "that appear to have been incurred due to actions with the SBA."  Def.'s EAJA Resp. at 18-19, 21-22.

Q Integrated is not entitled to fees for the time incurred on its motion to amend the complaint.  Q Integrated's billing records indicate that its attorneys spent 63.2 hours preparing the motion to amend.  *See* Pl.'s Mot., Ex. 3 at 18-20, 30.  The court denied Q Integrated's motion, however, because work was already underway on the four contract areas that Q Integrated sought to add to its protest, the motion was filed on the eve of the hearing on the parties' cross-motions on the administrative record, and it effectively sought to appeal a size determination for Sage even though the determination had been rescinded and the appeal process before the SBA had not been exhausted.  *Q Integrated I*, 126 Fed. Cl. at 139 n.17.  Since Q Integrated did not prevail on its motion to amend, even though its overall success in the litigation was not affected, the court will not award fees for the attorney time spent on the motion.  *See Hensley*, 461 U.S. at 434 (explaining that the court may deny fees where a "plaintiff fail[s] to prevail on claims that were unrelated to the claims on which he succeeded"); *see also Information Scis. Corp. v. United States*, 88 Fed. Cl. 626, 635 (2009) (denying fees for time spent on an unsuccessful motion to strike that "did not contribute to [plaintiff's] success").

---

[8]*Compare* Bureau of Labor Statistics, United States Department of Labor, Consumer Price Index: March 1996 at Table 1, https://www.bls.gov/news.release/history/cpi_041296.txt, *with* Bureau of Labor Statistics, United States Department of Labor, Consumer Price Index: April 2016 at Table 1, https://www.bls.gov/news.release/archives/cpi_05172016.htm.

[9]$125 x 239.26/155.7 = $192.08.

Therefore, the court shall reduce the number of attorney hours that are eligible for award by 63.2 hours.

The government's objection to hours that were allegedly spent on SBA actions is unavailing, however. The government argues that 27.7 hours should be disallowed because the corresponding time entries refer to the review of SBA decisions and regulations. Def.'s EAJA Resp. at 21-22; *see also, e.g.*, Pl.'s Mot, Ex. 3 at 19 (billing time for "[r]eview[ing] and analyz[ing] SBA regulations re[garding] outcome of adverse size determination"); *id.* at 20 (billing time for "[r]esearch[ing] [SBA Office of Hearing and Appeals] decisions re[garding] impact of adverse size determination and HUD's ability to not immediately terminate awards to Sage and Alpine"); *id.* at 22 (billing time for "[r]eview[ing] Alpine SBA size determination"). This review is relevant to Q Integrated's protest before this court, however, because adverse size determinations affected Q Integrated's standing to bring the protest. It was also reasonable for Q Integrated to assess whether an adverse size determination for Sage or Alpine could lead to Q Integrated receiving a contract award for the disputed areas, regardless of the protest, if the other offerors were deemed ineligible for award. *See Q Integrated II*, 131 Fed. Cl. at 132-34 (rejecting the government's claim on a motion for reconsideration that Q Integrated did not have standing, finding that virtually all offerors had been determined by SBA to be other than small). The time entries indicate that these hours were reasonably spent in connection with Q Integrated's bid protest before this court, and therefore Q Integrated is eligible to receive an award respecting the 27.7 hours identified by the government. *See Oliveira v. United States*, 827 F.2d 735, 744 (Fed. Cir. 1987) (explaining that recoverable expenses are those that are "incurred or expended solely or exclusively in connection with the case before the court," but that "[t]he quantum and method of proof of each allowable expense is discretionary with the trial court").

In sum, the court awards attorneys' fees to Q Integrated for 338.35 hours of attorney time at a rate of $192.08 per hour, bringing the total fee to $64,990.27.

*(c.) Other expenses.*

Finally, the government argues that Q Integrated's claim for $3,128.95 in related expenses should be denied in its entirety because the documentation provided by Q Integrated's attorneys lacks sufficient detail to show that all claimed expenses were incurred with respect to the protest in this court rather than Q Integrated's related proceedings before the SBA. *See* Def.'s EAJA Resp. at 19-21. These expenses include Westlaw research, shipping charges, conference call charges, courier charges, and working lunches. *Id.* at 21. In its reply, Q Integrated agreed to withdraw its request for $796.56 of these expenses to account for the government's objections. Pl.'s EAJA Reply at 8.

Subsection 2412(a) of Title 28 states that "[e]xcept as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States." 28 U.S.C. § 2412(a)(1). In turn, Subsection 2412(d) invokes the statutory exception, providing that "a court shall award to a prevailing party other than the United States fees and *other expenses, in addition to any costs awarded pursuant to* [*28 U.S.C. § 2412(a)*], incurred by that party in any civil action . . . brought by or against the United States." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). Expenses of the type sought by Q

Integrated "are consistently held to be recoverable under EAJA."  *Hyperion*, 118 Fed. Cl. at 148 (allowing recovery for "FedEx Office printing, binding, and overnight deliveries"); *see also Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988) (allowing recovery for telephone, reasonable travel, postage, and computerized research expenses), *aff'd sub nom. Commissioner, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154 (1990).  Therefore, taking into account Q Integrated's concessions to ensure that all claimed expenses relate to this litigation, the court awards Q Integrated $2,332.39 in related expenses pursuant to EAJA, encompassing the $400 filing fee, electronic legal research, FedEx shipping, courier charges, travel expenses, and conference calls.

## CONCLUSION

For the foregoing reasons, Q Integrated is awarded bid preparation and proposal costs of $21,124.47 and attorneys' fees and related expenses under EAJA of $67,322.66.  The clerk shall enter final judgment for plaintiff in the total amount of $88,447.13.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge